UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Savannah Boroff,                                          Case No. 3:26-cv-522

              Plaintiff,

   v.                                                  MEMORANDUM OPINION
                                                         AND ORDER

Wapakoneta City Schools Board of Education,

              Defendant.


## I.    INTRODUCTION

Plaintiff Savannah Boroff filed a verified complaint on behalf of her minor son, K.P., seeking declaratory and injunctive relief following the decision of Defendant the Wapakoneta City Schools Board of Education to expel K.P. for a period of 20 days, which would be held in abeyance if K.P. successfully completed the remainder of the school year in an alternate school placement. (Doc. No. 1).  Boroff also filed a motion for a temporary restraining order requiring Defendant to return K.P. to his normal school placement while an appeal of the expulsion determination is pending.  (Doc. No. 4).  On March 6, 2026, I held a telephonic hearing on the record with counsel for the parties to hear further argument in support of their respective positions.  Following that hearing, Defendant also filed a brief in opposition to Boroff's motion.  For the reasons stated below, I grant the motion.

## II.    BACKGROUND

K.P. is a student at Wapakoneta High School, where he receives "special education and related services pursuant to an individualized education plan ('IEP') which identifies numerous

disabilities, including but not limited to attention deficit hyperactivity disorder ('ADHD') and [specific] learning disability ('SLD')." (Doc. No. 1 at 3). K.P. was suspended from school for 10 days on February 10, 2026, after violating the school's code of conduct by fighting with another student. (Doc. No. 1-1 at 1). The assistant principal, Zane McElroy, also recommended that K.P. be expelled from school. (*Id.*; Doc. No. 1-3 at 1).

On February 18, 2026, members of K.P.'s IEP team and K.P.'s parents attended a manifestation determination review ("MDR"), a statutorily required meeting to determine whether K.P's conduct "was caused by, or had a direct and substantial relationship to, the child's disability[,] or if . . . [it] was the direct result of the local educational agency's failure to implement the IEP." (Doc. No. 1 at 3); 20 U.S.C. § 1415(k)(1)(E). While the IEP team concluded K.P.'s behavior was not a manifestation of his disability, Boroff alleges "[t]he MDR was legally deficient, including but not limited to Defendant's failure to discuss K.P.'s conduct, to consider any causal relationship between his conduct and his ADHD, and the use of an improper legal standard of review." (Doc. No. 1 at 3).

On February 24, 2026, while K.P. was serving the tenth day of his out-of-school suspension, Boroff appealed the MDR determination by filing an expedited due process complaint with the Ohio Office for Exceptional Children. (*Id.*; Doc. No. 1-2). The expulsion hearing was held the following day, during which Plaintiff's counsel informed Defendant that Boroff did not consent to moving K.P. to an interim alternative educational setting ("IAES") while the expedited due process complaint was pending with the Office of Exceptional Children.

Following the hearing, Plaintiff's counsel learned from a review of K.P.'s disciplinary records that K.P. had been removed from his IEP placement and moved to an IAES for a total of 12 days prior to receiving the 10-day suspension. (Doc. No. 1 at 4-5). Boroff alleges those removals

occurred "without convening K.P.'s IEP team, without conducting an MDR, without providing procedural safeguards notice[s] to Plaintiff, and without Plaintiff's consent." (*Id.*).

On February 26, 2026, Aaron Rex, Defendant's Superintendent, issued K.P. a 20[-]day expulsion held in abeyance, upon the condition of his compliance with the code of conduct and his attendance in an IAES for the remainder of the 2025-2026 school year." (*Id.* at 5).  (*See also* Doc. No. 1-3).  Boroff alleges Rex impermissibly assigned K.P. to the Opportunity for Youth Program because Rex did not obtain her consent or convene K.P.'s IEP as statutorily required.  (Doc. No. 1 at 5).

On the same date, Boroff filed an amended expedited due process complaint, seeking to add claims arising out of the expulsion directive, the unilateral IAES placement, and K.P.'s 12 prior days of removal from his IEP placement.  (*Id.* at 6).  Boroff also informed Rex that K.P. would not report to the IAES.  (Doc. No. 1-4).  Defendant refused to return K.P. to his original IEP placement and imposed the 20-day expulsion, which K.P. currently is serving.  (Doc. No. 1 at 7).  As a result, Boroff initiated this lawsuit, arguing Defendant has violated the stay-put provision of the Individuals with Disabilities Education Act ("IDEA").  (*See id.* at 7-9).

### III.    STANDARD

The purpose of both a preliminary injunction and a temporary restraining order is to preserve the status quo until a trial on the merits or some other reasoned resolution of the dispute takes place. *See, e.g.*, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996).  Given this limited purpose, they are customarily granted based on procedures less formal and evidence less complete than one would find in the record of a trial on the merits. *Camenisch*, 451 U.S. at 395.

The same standard generally applies to the issuance of preliminary injunctions and temporary restraining orders. *Northeast Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199*

*v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). To grant either form of injunctive relief, a court must consider: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent a stay; (3) whether granting the stay would cause substantial harm to others; and (4) whether the public interest would be served by granting the stay." *Id.* These "are factors to be balanced, not prerequisites that must be met." *In re De Lorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

A court considering whether to issue a temporary restraining order generally must place an emphasis on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo. *See Motor Vehicle Board of California v. Orrin W. Fox,* 434 U.S. 1345, 1347 n. 2 (1977); *see also* Fed. R. Civ. P. 65(b)(2) (temporary restraining orders must "describe the injury and state why it is irreparable," but discussing no other factor).

### IV. ANALYSIS

The purpose of the IDEA, among other things, is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[ and] . . . to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). The Department of Education has promulgated federal regulations related to the application of the IDEA's requirements. *See* 20 U.S.C. § 1406(a). And the IDEA requires each state that receives federal education funds must "ensure that any State rules, regulations, and policies relating to [the IDEA] conform to the purposes of [the IDEA]." 20 U.S.C. § 1407(a)(1).

Section 1415 provides for certain delineated procedural safeguards for children and parents who are covered by the IDEA. Relevant here are the provisions governing the maintenance of a

4

child's current educational placement and placement into an alternate educational setting.  20 U.S.C. §§ 1407(j) and (k).  *See also* Ohio Admin. Code § 3301-51-05(K)(18)-(22).

The IDEA permits school districts to "remove a child with a disability who violates a code of student conduct from the child's current placement to an appropriate [IAES], another setting, or suspension, for not more than ten consecutive school days."  Ohio Admin. Code § 3301-51-05(K)(19)(b)(i).  When a disciplinary change in placement would exceed ten consecutive school days,

> "if the behavior that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability pursuant to paragraph (K)(19)(e) of this rule, school personnel may apply the relevant disciplinary procedures to children with disabilities in the same manner and for the same duration as the procedures would be applied to children without disabilities."

Ohio Admin. Code § 3301-51-05(K)(19)(c).

But if the behavior at issue was determined to be a manifestation of the child's disability, the IEP team must "[c]onduct a functional behavioral assessment . . . and implement a behavioral intervention plan," or, if there already is a behavioral intervention plan in place, review the plan and its implementation and make any necessary modifications.  Ohio Admin. Code § 3301-51-05(K)(19)(f)(i)(a)-(b).  Moreover, other than in circumstances not applicable here, if the behavior is determined to be a manifestation of the child's disability, the school must "return the child to the placement from which the child was removed" unless the school and the parent agree otherwise.  Ohio Admin. Code § 3301-51-05(K)(19)(f)(ii).

The Ohio Administrative Code also provides an appellate process for determinations with which a parent or a school disagree.  Ohio Admin. Code § 3301-51-05(K)(21).  Generally, if a parent files an appeal pursuant to § 3301-51-05(K)(21)(a) of a placement decision or a manifestation determination made under § 3301-51-05(K)(19):

> Except as provided in paragraph (K)(22) of this rule, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under paragraph (K)(7) of this rule, unless the department of education and workforce or educational agency and the parents of the

5

child agree otherwise, the child involved in the complaint must remain in the child's current educational placement.

Ohio Admin. Code § 3301-51-05(K)(18)(a).  Under § 3301-51-05(K)(22), when a parent or school files an appeal pursuant to § 3301-51-05(K)(21), "the child must remain in the interim alternative educational setting pending the decision of the hearing officer or the expiration of the time period specified in [the disciplinary notice] . . ., whichever occurs first."  Ohio Admin. Code § 3301-51-05(K)(22).

Boroff alleges Defendant has violated the stay-put provision found in § 1415(j) and § 3301-51-05(K)(18) because it moved K.P. into an IAES after conducting a deficient MDR and without her consent, despite the fact that she filed a due process complaint pursuant to § 3301-51-05(K)(21) before Defendant announced K.P. would be moved to an IAES for the remainder of the school year or expelled for 20 days.  (*See* Doc. No. 1 at 7-8).  She argues "Defendant utilized an improper legal standard in [its] review, and failed to consider K.P.'s ADHD, failed to discuss K.P.'s conduct, and ultimately concluded that K.P.'s conduct was not a manifestation of his SLD only."  (Doc. No. 4 at 3).  She also contends that § 3301-51-05(K)(22) does not apply because she filed the expedited due process complaint while K.P. was serving the 10-day suspension from his IEP classroom placement and had not yet been placed into an IAES.  (*See id.*).  Boroff seeks a temporary restraining order requiring Defendant to immediately return K.P. to his last agreed-upon placement and prohibiting Defendant from enforcing its unilateral disciplinary removal of K.P. to the Opportunity for Youth Program while the appeal is pending.

Defendant opposes Boroff's motion.  It contends "[a]ll expedited due process complaints involve situations where an [IAES] is required."  (Doc. No. 10 at 2-3).  Defendant argues Boroff cannot succeed on the merits of her stay-put regulation challenge and, therefore, she is not entitled to injunctive relief.  I disagree, and I conclude Boroff has met her burden for temporary injunctive relief.

A.      LIKELIHOOD OF SUCCESS ON THE MERITS

While Boroff must show there is "more than a mere possibility" she will succeed on the merits of her claim, she need not prove her case "in full" in order to obtain injunctive relief. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (citations and internal quotation marks omitted).  In order to demonstrate a likelihood of success on the merits, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *In re DeLorean Motor Co.,* 755 F.2d at 1229).

Boroff filed her expedited due process complaint while K.P. was serving an out-of-school suspension from his current educational placement within the high school.  Therefore, she argues, that placement as identified in K.P.'s IEP is subject to § 3301-51-05(K)(18)(a)'s stay-put provision, and not that found in § 3301-51-05(K)(22). *Cf. R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 140 (3rd Cir. 2013) ("If an IEP has been implemented, then that program's placement will be the one subject to the stay[-]put provision.") (citation and quotation marks omitted) (alteration by *R.B.*). Moreover, Boroff argues that § 3301-51-05(K)(22) does not apply because that provision calls for a student to "remain" in an IAES pending appeal, and that K.P. could not "remain" in an IAES because he had not been placed in one prior to appeal.

As the parties acknowledged during the March 6, 2026 hearing, the word "remain" is not defined in the IDEA.  When Congress does not define a statutory term, courts "must give the term[] . . . [its] ordinary meaning." *United States v. Small*, 988 F.3d 241, 254 (6th Cir. 2021) (citations omitted).  "Remain" may be defined to mean "to continue in the same state" or "to stay . . . in the same place." *See* https://www.dictionary.com/browse/remain (last accessed March 8, 2026).  These definitions support Boroff's argument that § 3301-51-05(K)(22) does not apply.  And while

7

Defendant argued during the telephonic hearing that the Sixth Circuit has struggled at times with the proper interpretation of the word "remain" in similar circumstances, applying it in ways beyond its ordinary meaning, I conclude this potential for ambiguity makes it more likely that Boroff may succeed on the merits of her claim.

Further, I conclude Boroff "has raised questions going to the merits [of her stay-put provision claim] so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics*, 119 F.3d at 402. Therefore, this factor weighs in favor of the issuance of injunctive relief.

**B.      IRREPARABLE HARM**

"In the preliminary-injunction context, 'irreparable injury' asks whether, without an injunction, a plaintiff will likely suffer harm *before* final judgment that cannot be remedied at final judgment." *Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023) (citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)) (emphasis in original).

The Supreme Court, in analyzing a predecessor statute to the IDEA, stated that "one of the evils Congress sought to remedy was the unilateral exclusion of disabled children by *schools . . .* and one of the purposes of [the stay-put provision], therefore, was 'to prevent *school* officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.'" *Honig v. Doe*, 484 U.S. 305, 327 (1988) (quoting *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372 (1985)) (emphasis by *Honig*).

While that predecessor statute did not contain an expedited due process procedure or additional school safety provisions found in the IDEA, the underlying principle holds true. Boroff alleges serious concerns with the IEP team's conduct during the MDR and with the team's

8

manifestation determination – a determination that cleared the way for Rex to issue Defendant's expulsion order.[1]

Moreover, monetary damages, if later awarded, would not remedy the harm K.P. is experiencing.  *See LIH ex rel. LH v. New York City Bd. of Educ.*, 103 F. Supp. 2d 658, 665 (E.D.N.Y. 2000) (holding "[n]o level of monetary damages could possibly compensate these students for the educational opportunities they will lose" as the result of an erroneous suspension).  While *LIH ex rel. LH* involved disabled students who were removed from their placement in summer school and thus faced the possibility that they would not advance to the next grade, K.P.'s circumstances are substantively similar.  Because Boroff has refused to consent to moving K.P. to an IAES, K.P. is required to serve the 20-day expulsion and offered only 5 hours of home instruction per week – an amount significantly below the normal instruction time provided to Ohio high school students.

Failure to grant preliminary injunctive relief would in essence make Defendant's decision underlying this case unreviewable.  Defendant ordered K.P. to agree to an IAES for the remainder of the school year or serve a 20-day expulsion.  Boroff refused to send K.P. to the IAES, so he currently is expelled from his school.  As Defendant acknowledges, even the expedited review process may take up to 30 school days to conclude.  (*See* Doc. No. 10 at 3).

As in *LIH ex rel. LH*, I conclude no amount of monetary damages could fully compensate K.P. for these lost hours of instruction.  This factor weighs in favor of injunctive relief as well.

## C.     REMAINING FACTORS

As I noted above, I also must consider whether granting Boroff's motion would cause substantial harm to others and whether the public interest would be served by granting the motion. While Defendant has expressed a justifiable interest in the safety of students and faculty and the

---

[1]  Additionally, I note that the record appears to support the conclusion that Defendant, rather than the IEP team as required by the IDEA, made the IAES placement decision.  *See* 20 U.S.C. § 1415(k)(2).

9

security of its facilities, I conclude Defendant has not shown it would suffer harm or that the public interest would not be served if I grant Boroff's motion.  Therefore, I conclude these factors weight in favor of granting preliminary injunctive relief as well.

**D.      Posting a Bond**

Rule 65 states that a "court may issue . . . a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The bond requirement is "discretionary."  *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978).  Defendant has not requested that Boroff post a bond in this matter, and I conclude that a bond is not required.  *Cf. Laster v. Dist. of Columbia*, 439 F. Supp. 2d 93, 99 n.7 (D.D.C. 2006).

## V.      CONCLUSION

For the reasons stated above, I grant Plaintiff Savannah Boroff's motion for a temporary restraining order and preliminary injunction.  (Doc. No. 4).  I hereby order that:

(1)  Defendant and all persons acting in concert with it are temporarily restrained from enforcing the expulsion and IAES placement imposed on K.P. on February 26, 2026.

(2)  Defendant shall immediately permit K.P. to attend Wapakoneta High School and receive all services, accommodations, and supports in his general education classroom as outlined in K.P.'s IEP as of February 24, 2026, pending final resolution of the underlying administrative and judicial proceedings.

(3) Defendant shall immediately return K.P. to his "then-current educational placement," defined as the last agreed-upon IEP placement in effect prior to the unilateral disciplinary change.

(4)  Defendant shall permit K.P. to attend and receive all services, accommodations and supports required under K.P.'s IEP in that placement pending final resolution of the administrative and judicial proceedings.

(5) This temporary restraining order shall remain in effect for 14 days from the date of entry unless the duration is extended by consent of the parties or for good cause.

(6)  Plaintiff is not required to post a bond in connection with this temporary restraining order.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge